UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILCO TRADING LLC,

     Plaintiff,

v.                                                            Case No: 8:20-cv-579-TPB-JSS

SHAHAR SHABAT and EL SALES
CORP.,

     Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff's Motion for Final Default Judgment for Money Damages and Permanent Injunctive Relief ("Motion"). (Dkt. 22.) For the reasons that follow, the undersigned recommends that the Motion be granted in part and denied in part.

## BACKGROUND

On March 11, 2020, Plaintiff, Wilco Trading LLC, filed this action against Defendants, Shahar Shabat and EL Sales Corp., alleging false or misleading representations and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count I), deceptive and unfair trade practices under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 (Count II), tortious interference (Count III), and defamation and trade libel (Count IV). (Dkt. 1.)

Plaintiff alleges that it is an online reseller which primarily conducts its business on Amazon. (Dkt. 1 ¶ 2.) Plaintiff states that until recently, it sold several beauty

products made or branded by Defendant EL Sales Corp. ("EL Sales"), including products sold under EL Sales' "Predire Paris" trademark. (*Id.*) According to Plaintiff, it purchased these products at a low price from a discount retailer, Nordstrom Rack, which confirmed to Plaintiff that that the products were originally purchased by Nordstrom Rack directly from EL Sales. (*Id.*)

Despite the authenticity of the products Plaintiff was selling on Amazon, Defendants filed complaints under penalty of perjury with Amazon claiming that Plaintiff was selling counterfeit Predire Paris products and infringing on EL Sales' trademarks. (Dkt. 1 ¶ 3.) Defendants also posted a warning on the Predire Paris webpage, stating:

> Warning: Dear valued customers please be aware of counterfeit products being sold under our trusted name by unauthorized dealers.
>
> These products are not created with our quality ingredients and lab-tested formulas.
>
> We cannot be responsible for the possible skin damage and adverse reactions that may occur when administering these counterfeit products.
>
> As our legal team is taking action against these companies and working diligently to rectify the situation, please protect yourself from becoming a victim of these companies' illegal activities and only purchase from our authorized account on sites: www.ebay.com and www.amazon.com.
>
> Please, do not hesitate to contact us at csr@elsalescorp.com if you have any questions or concerns regarding these counterfeit products.

(Dkt. 1 ¶¶ 16–17, 26.)

As a result of Defendants' complaints and other false claims about Plaintiff, Amazon initially shut down Plaintiff's listings of EL Sales' Predire Paris products and later suspended Plaintiff's seller account entirely. (Dkt. 1 ¶ 3.) Plaintiff contacted Amazon to challenge Defendants' counterfeiting allegations, but Amazon refused to reinstate Plaintiff's product listings on its e-commerce platform for several months. (Dkt. 1 ¶ 15.) According to Plaintiff, Defendants engaged in these anticompetitive tactics because EL Sales itself sells Predire Paris products on Amazon at higher prices than those offered by resellers such as Plaintiff. (Dkt. 1 ¶¶ 3, 20–21, 25–26.)

On March 18, 2020, Plaintiff filed returns of service reflecting service of process on Defendants. (Dkts. 7, 8, 9.) After Defendants did not appear, Clerk's defaults were entered against them. (Dkts. 14, 15.) On September 18, 2020, Plaintiff moved for final default judgment against Defendants. (Dkt. 22.)

## APPLICABLE STANDARDS

When a party fails to plead or otherwise defend a judgment for affirmative relief, the clerk of the court must enter a default against the party against whom the judgment was sought. Fed. R. Civ. P. 55(a); *see also* Fed. R. Civ. P. 12(a)(1)(A)(i) (providing that a defendant must serve an answer within twenty-one days after being served with the summons and complaint). Because of the "strong policy of determining cases on their merits," however, default judgments are generally disfavored. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). "[W]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut.*

*Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (alteration omitted) (quotation marks omitted). Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Eleventh Circuit has interpreted the standard to obtain a default judgment "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## ANALYSIS

Plaintiff's Motion requests the Court enter default judgment and a permanent injunction, as well as award Plaintiff compensatory damages, punitive damages, attorney's fees, and costs, for Defendants' (1) false advertising and unfair competition in violation of Section 43(a) of the Lanham Act; (2) deceptive and unfair trade

- 4 -

practices under FDUTPA; tortious interference with Plaintiff's contract and business relationship with Amazon; and (4) defamation and trade libel.

## I.   Subject Matter Jurisdiction

The Complaint alleges subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332. (Dkt. 1 ¶ 8.)  As explained below, the Complaint fails to state a claim under the Lahman Act, and the Court therefore lacks federal question jurisdiction under § 1331. However, the Complaint sufficiently alleges complete diversity and an amount in controversy in excess of $75,000, thus establishing a basis for diversity jurisdiction. (Dkt. 1 at 3, 15–16.)  The Court therefore finds that subject matter jurisdiction exists under § 1332.

## II.   Choice of Law

A federal court sitting in diversity applies the conflict-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Bryan v. Hall Chem. Co.*, 993 F.2d 831, 834 (11th Cir. 1993).  Thus, the Court applies Florida's choice of law rules.  "In tort cases, Florida applies the significant relationship test of the Restatement (Second) of Conflict of Laws," which "involves consideration of several factors to determine which state has the most contacts with the action or the greatest interest in the outcome."  *Nelson v. Freightliner, LLC*, 154 Fed. App'x 98, 102 (11th Cir. 2005).  The four contacts to be considered are: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and,

(d) the place where the relationship, if any, between the parties is centered." Restatement 2d of Conflict of Laws, § 145(2).

Here, the Complaint alleges that Defendant Shabat is domiciled in Tampa, Florida, and that Defendant EL Sales is a Florida corporation with its principal place of business in Tampa, Florida. (Dkt. 1 ¶¶ 6, 7.) The Complaint further alleges that Defendants submitted false complaints to Amazon regarding Plaintiff's products, resulting in the suspension of Plaintiff's Amazon seller account. The Complaint also alleges that Defendants maintained a website that included misleading claims about unauthorized dealers of products manufactured by Defendants. (Dkt. 1 ¶¶ 3, 16–17, 26.) Applying the substantial relationship test, the Court finds that Florida law applies to the claims asserted in Counts II, III, and IV of the Complaint.

## III.   Liability

### A.   Count I

In Count I, Plaintiff alleges a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a). (Dkt. 1 ¶¶ 40-47.) The false representations at issue include 1) Defendants' false complaints to Amazon that Plaintiff was selling counterfeit products; and 2) Defendants' warning to customers on its Predire Paris webpage regarding "unauthorized dealers." (Dkt. 1 ¶¶ 42–43.)

To state a false advertising claim under § 1125(a), a plaintiff must allege:

> (1) the advertisements of the opposing party are false or misleading as to the party's own product o[r] another's; (2) the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely

to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by [causally] related declining sales or loss of goodwill.

*Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007) (citing *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260–61 (11th Cir. 2004)).  Here, the Court first determines whether these communications are subject to Section 43(a) of the Lanham Act before addressing whether the Complaint sufficiently alleges the elements a false advertising claim.

### 1.   Commercial Advertising or Promotion

"'To be actionable under the Lanham Act, the speech at issue must be commercial in nature.'"  *VG Innovations, Inc. v. Minsurg Corp.*, 2011 WL 1466181 at *5 (M.D. Fla. Apr. 18, 2011) (quoting *Futuristic Fences, Inc. v. Illusion Fence, Corp.*, 558 F. Supp. 2d 1270, 1279 (S.D. Fla. 2008)).  Speech constitutes commercial advertising or promotion when it is:

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Id.* (quoting *Gordon & Breach Science Publishers, S.A. v. Am. Institute of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994)).

- 7 -

Here, Defendants' false complaints to Amazon do not constitute commercial speech because the complaints were made directly to Amazon and not consumers. *See, e.g., Thimes Sols. Inc. v. TP Link USA Corp.*, No. CV 19-10374 PA (EX), 2020 WL 6154192, at *2 (C.D. Cal. Aug. 31, 2020) (finding amendment of Lanham Act claim would be futile where "[d]efendants' complaints were made directly to Amazon—who is not a consumer—and the complaints were not disseminated to the relevant purchasing public"); *Sky Billiards, Inc. v. WolVol, Inc.*, No. CV1502182RGKKKX, 2016 WL 7479426, at *2 (C.D. Cal. Feb. 22, 2016) (ruling [p]laintiff did not meet the first element of a Lanham Act false advertising claim where complaint alleged that defendant contacted Amazon and alleged that plaintiff's products violated defendant's intellectual property rights); *see also BLM Prod., Ltd. v. Covves*, LLC, No. 217CV06224RGKPLA, 2017 WL 8811269, at *5 (C.D. Cal. Oct. 26, 2017) (dismissing Lanham Act claim where plaintiff alleged defendant made representations to Amazon by filling out an infringement form and noting that "the representation was made only to Amazon, out of view of the general public"). Thus, Plaintiff's allegations that Defendants made false infringement complaints to Amazon are insufficient to support a false advertising claim because these complaints were not "commercial advertising or promotion" within the meaning of the Lanham Act.

Regarding Defendants' warning on the Predire Paris website regarding "unauthorized dealers," this warning arguably constitutes "commercial advertising" under the Lanham Act. *See Sourcing Sols. USA, Inc. v. Kronos Am.*, LLC, No. 10-23476-CIV, 2011 WL 13223514, at *3 (S.D. Fla. Jan. 26, 2011) ("Information posted on the

website may constitute advertising."); *1524948 Alberta Ltd. v. Lee*, No. 1:10-CV-02735-RWS, 2011 WL 2899385, at *5 (N.D. Ga. July 15, 2011) (ruling communications on defendant's website were subject to Section 43(a) of the Lanham Act where the complaint alleged that the website "disseminated the allegedly false statements to anyone who accessed the website").  Because this portion of the conduct alleged in Count I is subject to the Lanham Act, the Court turns to issue of whether Plaintiff's allegations regarding the warning on the Predire Paris website are sufficient to state a claim under § 1125(a).

### 2.    False or Misleading to Consumers

A false advertising claim under the Lanham Act must allege that "the advertisements of the opposing party are false or misleading." *Third Party Verification*, 492 F. Supp. 2d at 1324.  A statement is false or misleading when (1) it is literally false as a factual matter or (2) literally true or ambiguous but likely to mislead or deceive customers.  *Hickson*, 357 F.3d at 1261.  Whether a statement is literally false or misleading affects the plaintiff's burden.  *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1318–19 (11th Cir. 2010).  If a court deems a statement literally false, the plaintiff need not prove the element of deception.  *Id.* at 1319.  On the other hand, when a statement is literally true or ambiguous but misleading, the plaintiff must introduce some evidence of consumer reaction.  *Id.*; *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 n.3 (11th Cir. 2002) (noting a split in the Courts of Appeals as to what type of evidence a plaintiff must produce for consumer deception but that

"[e]ven in circuits with the lower standard, the movant must produce some evidence of consumer reaction").

Here, Plaintiff alleges that the warning page on the Predire website is false and misleads the public in several respects. First, Plaintiff alleges that, through the warning, Defendants "publicly state to all potential customers that [Defendants] *only* sell Predire Paris products through certain 'authorized' dealers." (Dkt. 1 ¶ 26) (emphasis added). Plaintiff further alleges that, through the warning, Defendants "also falsely . . . state that *all* other products are not only 'unauthorized," but 'counterfeit' and therefore dangerous, which is false." (Dkt. 1 ¶ 26) (emphasis added). In addition, Plaintiff alleges that Defendants sell some Predire Paris to discount retailers, such as Nordstrom Rack, and thus have no basis for claiming that products sold by resellers are counterfeit. (Dkt. 1 ¶ 43.) Lastly, Plaintiff alleges, "on information and belief," that Defendants falsely claim that their "legal team is taking action against these companies and working diligently to rectify the situation." (Dkt. 1 ¶¶ 26, 43.)

Reading the Complaint in the light most favorable to Plaintiff, the Court finds Plaintiff has not identified any literally false statements on the Predire Paris website in its well-pleaded factual allegations or otherwise. Specifically, contrary to Plaintiff's allegations, the warning does not state that Defendants *only* sell Predire Paris products through authorized dealers. (Dkt. 1 ¶ 17.) In addition, the warning does not state that *all* products sold through unauthorized dealers are counterfeit. (Dkt. 1 ¶ 17.) Lastly, the warning does not state, as Plaintiff alleges, that products being resold by specific

unauthorized dealers, such as Nordstrom Rack or Plaintiff, are counterfeit. (Dkt. 1 ¶ 17.)

The primary factual assertion contained in the warning is that customers "should be aware of counterfeit products being sold under our trusted name by unauthorized dealers." (Dkt. 1 ¶ 17.)  This factual assertion is not false so long as any unauthorized dealer sold counterfeit Predire Paris products.  Thus, the warning would only be literally false if *no* unauthorized dealers sold counterfeit Predire Paris products. The Complaint does not make this allegation.  The Court finds that the language of the warning on the Predire Paris website does not support Plaintiff's contention that the warning is literally false.

Regarding Plaintiff's allegation that Defendants falsely claim to have hired a legal team to take action against unauthorized dealers selling counterfeit products, Plaintiff's allegation is based on information and belief. (Dkt. 1 ¶ 43.)  In support of the allegation, Plaintiff refers to the fact that Defendants submitted false complaints about Plaintiff to Amazon. (*Id.*)  "[T]he mere fact that a complaint includes allegations asserted on information and belief is not, in and of itself, a basis for dismissal." *Latele Television C.A. v. Telemundo Commc'ns Grp.*, LLC, No. 12–22539–CIV, 2013 WL 1296314, at *11 (S.D. Fla. March 27, 2013) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).  In this case, the statement Plaintiff relies on—specifically, that Defendants claim to have hired legal counsel to "take action" against unspecified "unauthorized dealers"—is too tenuous, standing alone, to support a conclusion that Defendants have engaged in false advertising in violation of the

Lanham Act by making literally false statements about Plaintiff.  *See, e.g.*, *Intra-Lock Int'l, Inc. v. Choukroun*, No. 14-CV-80930, 2015 WL 11422285, at *6 (S.D. Fla. May 4, 2015) (addressing defendant's allegedly false claim that its product was "authorized" and concluding plaintiff's position was "far too tenuous to find that Defendants' marketing tactics are false or misleading").  Thus, the Court concludes Plaintiff failed to plausibly plead an actionable claim that the warning contained on Defendants' Predire Paris website is literally false.

### 3.     Deception

Plaintiff's Lanham Act false advertising claim is based on the contention that Defendants, on their Predire Paris website, created a specious distinction between authorized and unauthorized dealers of Predire Paris products while implying that at least some products sold by unauthorized dealers are counterfeit.  Because Defendants' warning is not literally false and instead is only potentially misleading, Plaintiff must allege and introduce some evidence of consumer deception.  *See Overhead Door Corp. v. Burger*, No. 1:12-CV-101 WLS, 2013 WL 3057796, at *5 (M.D. Ga. June 17, 2013) (denying default judgment where false advertisements were not literally false and plaintiff "has not alleged or provided evidence of consumer deception").  On this point, the Complaint alleges the following:

> These statements have deceived Amazon . . . and are likely to deceive and confuse the public, which was the Defendants' intent, including by directly affecting the pricing and availability of the products at issue, as well as limiting customer reviews of the product from various sources, and otherwise communicating false or incomplete information about the products at issue to the public.

- 12 -

(Dkt. 1 ¶ 44.)

As previously noted, Plaintiff's allegations regarding Defendants' false complaints to Amazon are insufficient to support a Lanham Act false advertising claim. To the extent Plaintiff alleges that the warning on the Predire Paris website was "likely to deceive and confuse the public," Plaintiff's claim is purely conclusory. This recital of one element of the cause of action is a "'naked assertion [],' devoid of 'further factual enhancement,'" and it cannot survive a motion to dismiss. *Iqbal*, 556 U.S. 662 at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Ameritox, Ltd. v. Millennium Labs., Inc.*, No. 8:11-CV-775-T-24-TBM, 2012 WL 33155, at *3 (M.D. Fla. Jan. 6, 2012) (ruling that plaintiff's assertions that defendant's statements were "likely to deceive a substantial portion of the targeted customers" merely recited one element of the cause of action and was insufficient to survive a motion to dismiss). Thus, the Court concludes that default judgment is not warranted as to Count I because Plaintiff failed to plausibly plead the false-or-misleading element of a Lanham Act claim.

### 4. Materiality

A false advertising claim under the Lanham Act must allege that "the deception is material, meaning it is likely to influence purchasing decisions." *Third Party Verification*, 492 F. Supp. 2d at 1324. Here, Plaintiff has not expressly pleaded that Defendants' deceptions were material. Instead, Plaintiff has alleged that Defendants statements "have deceived Amazon . . . and are likely to deceive and confuse the public." As previously noted, Plaintiff's allegations regarding Defendants' false

complaints to Amazon are insufficient to support a Lanham Act false advertising claim. Although the Court must assume all factual allegations as true, Plaintiff's allegation provides nothing more than a legal conclusion and does not adequately allege the materiality of the warning contained on the Predire Paris webpage. *See, e.g.*, *Ameritox, Ltd.*, 2012 WL 33155, at *3 (dismissing plaintiff's Lanham Act claim where plaintiff "failed to allege sufficient facts to support the material-deception element of its false advertising claim"). Thus, the Court concludes that default judgment is not warranted as to Count I because Plaintiff failed to plausibly plead the materiality element of a Lanham Act claim.

### 5.    Injury

A party asserting a claim of false advertising under the Lanham Act must specifically allege that the false or misleading statement "results in actual or probable injury." *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1348 (Fed. Cir. 1999) (citation omitted). Here, Plaintiff alleges that Defendants' false and misleading representations caused damages to Plaintiff's economic and reputational interests. (Dkt. 1 ¶ 46.) Plaintiff's allegations of damages and harm focus on the loss of sales that resulted after Amazon terminated Plaintiff's seller account following Defendants' complaints of counterfeiting and infringement. As previously noted, Defendants' complaints to Amazon regarding Plaintiff are not actionable under the Lanham Act. Separately, Plaintiff has not alleged how the warning contained on the Predire Paris website caused damages to Plaintiff's economic and reputational interests. *See, e.g*, *Beaulieu Grp., LLC v. Mohawk Indus., Inc.*, No. 4:15-CV-0124-HLM , 2015 WL 11722814, at *5

(N.D. Ga. Oct. 26, 2015) (ruling plaintiff failed to state a false advertising claim where allegations of harm and causal connection between harm and false statements were conclusory).  Plaintiff's explanation of its damages focuses solely on the damages that resulted from Defendants'  non-actionable complaints against Plaintiff on Amazon, including Amazon's suspension of Plaintiff's seller account.  (Dkt. 22 ¶ 13.)  Thus, the Court concludes that default judgment is not warranted as to Count I because Plaintiff failed to plausibly plead the damages element of a Lanham Act claim.

## B. Count II

To state a claim under FDUPTA, a party must plead: (1) a deceptive or unfair practice; (2) causation; and (3) actual damages or aggrievement.  *See Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1326 (M.D. Fla. 2007).  A deceptive act is one that is likely to mislead consumers.  *Id.* at 1326.  An unfair practice is one that offends established public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  *Id.*

Florida courts consider actual damages, the third element of a FDUTPA claim, to be a "term of art," defined by "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered."  *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1984); *see also Eclipse Med., Inc. v. Am. Hydro-Surg. Instruments, Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999).

"FDUTPA 'actual damages' do not include consequential damages." *Kia Motors America Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008); *see also Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) (stating that "for purposes of recovery under FDUTPA, actual damages do not include consequential or special damages"); *City First Mortg. Corp.*, 988 So. 2d at 86 (same).  Lost profits are a "quintessential example" of consequential damages.  *See Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 1987).

Here, the Complaint alleges that Defendants made false complaints to Amazon that Plaintiff was selling counterfeit goods, resulting in the suspension of Plaintiff's seller account, causing reputational damage, and deceiving and confusing the public. (Dkt. 1 ¶¶ 11–38, 48–51.)  Plaintiff's damages allegation, however, only mentions "lost sales and profits," along with reputational damage.  (Dkt. 1 ¶ 50.)  Several courts in this Circuit, applying Florida law, have found that consequential damages, including lost profits, cannot be recovered under FDUTPA.  *See Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012) ("It remains well-settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA."); *QSGI, Inc. v. IBM Global Financing*, Case No. 11-80880, at *5, 2012 WL 1150402 (S.D. Fla. 2012) (finding plaintiff's damages of "lost profits" and "lost business" did not state actual damages required to plead FDUTPA claim); *see also Rollins*, 951 So. 2d at 869.

In the absence of any discernible allegation of actual damages, the Court finds that the Complaint fails to state a claim under FDUPTA.  *See, e.g., Diversified Mgmt.*

*Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 WL 4256916, at \*6 (S.D. Fla. May 16, 2016) (dismissing FDUTPA claim without prejudice where complaint sought only lost profits, which "are consequential damages, and, thus, not recoverable under FDUTPA").

### C. Count III

In Florida, the elements of tortious interference are:

> (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So.2d 1126, 1127 (Fla. 1985) (per curiam). Here, the Complaint alleges that Plaintiff had an existing business relationship with Amazon of which Defendants were aware, and that Defendants made false complaints to Amazon that Plaintiff was selling counterfeit goods, resulting in the suspension of Plaintiff's seller account.  (Dkt. 1 ¶¶ 11–38, 53–57.)  The Court finds that Plaintiff's allegations as set forth in its Complaint are sufficient to state a claim of tortious interference under Florida law.  The Court also finds that to the extent Federal Rule of Civil Procedure 9(b) applies to Plaintiff's tortious interference claim, Plaintiff's allegations satisfy Rule 9(b)'s heightened pleading requirements.

### D. Count IV

In Count IV, Plaintiff alleges defamation and trade libel.  Florida law recognizes two forms of defamation: defamation *per se* and defamation *per quod*.  The difference between defamation *per se* and defamation *per quod* has been explained as follows:

> Under Florida law, to assert a claim for defamation—libel or slander—a plaintiff must establish that: "(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to another." Libel (written defamation) may be proven in two ways: *per se* or *per quod*. Libel *per quod* requires the statement to be put in context so as "to demonstrate [its] defamatory meaning or that the plaintiff is the subject of the statement." To allege a claim for libel *per se*, however, the plaintiff need not show any special damages because per se defamatory statements are "so obviously defamatory and damaging to [one's] reputation that they give rise to an absolute presumption both of malice and damage.". . .
>
> A written publication . . . rises to the level of libel *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." In a libel per se action, consideration is given only to the "four corners" of the publication. The statement should not be interpreted in the extreme, but as the "'common mind' would normally understand it."

*Aflalo v. Weiner*, 2018 WL 3235529, at *1–2 (S.D. Fla. July 2, 2018) (internal citations and footnote omitted).

Here, Plaintiff sufficiently alleges that Defendants committed defamation *per se* by making false complaints to Amazon that Plaintiff was selling counterfeit goods. (Dkt. 1 ¶¶ 58–64.)   According to the Complaint, Defendant accused Plaintiff of

unlawful activity for the purpose of having Plaintiff's listings of competing products removed from Amazon.  (Dkt. 1 ¶¶ 11–38, 58–64.)   The Court finds that Plaintiff's allegations as set forth in its Complaint are sufficient to state a claim of defamation under Florida law.  The Court finds that Plaintiff's allegations as set forth in its Complaint are sufficient to state a claim of defamation and trade libel under Florida law.

## I.    Remedies

### A.    Permanent Injunction

In Counts I, II, and III, Plaintiff requests injunctive relief directing that Defendants retract their complaints against Plaintiff and refrain from "lodging any further baseless or false complaints against Wilco Trading on Amazon."  (Dkt. 1 ¶¶ 47, 52, 57.) Plaintiff submits a sworn declaration attesting that the requested injunctive relief is not mooted by the fact that Amazon has reinstated Plaintiff's seller account. (Dkt. 22-1 ¶¶ 23–24.)   Because the Court has recommended dismissal without prejudice as to Counts I and II, the Court addresses whether injunctive relief is available as to Count III.

In appropriate circumstances, injunctive relief may be available against a competitor company in a tortious interference with contract claim.  *See Paul's Drugs, Inc. v. S. Bell Tel. & Tel. Co.*, 175 So. 2d 203, 205 (Fla. 3d DCA 1965).  "To obtain a permanent injunction under Florida law, a plaintiff must 'establish a clear legal right [to the relief requested], an inadequate remedy at law, and that irreparable harm will arise absent injunctive relief.'"  *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, No. 09-10004,

2009 WL 4890664, at *6 (S.D. Fla. Dec. 17, 2009) (quoting *Liberty Counsel v. Fla. Bar Bd. of Governors*, 12 So. 3d 183, 186 n.7 (Fla. 2009)).

Here, Plaintiff fails to plead an inadequate remedy at law or that irreparable harm will arise absent injunctive relief. Although the Complaint asserts an entitlement to injunctive relief, the Complaint does not allege why any remedy at law, such as a lawsuit seeking damages, would be inadequate to address the likelihood of irreparable harm. *See, e.g.*, *Cox v. Porsche Fin. Servs., Inc.*, No. 1:16-CV-23409, 2020 WL 8269306, at *7 (S.D. Fla. Aug. 17, 2020) (ruling conclusory allegations regarding future harm were insufficient to support entitlement to injunctive relief under FDUTPA); *Hoewischer v. Joe's Properties, LLC*, No. 3:11-CV-769-J-12MCR, 2012 WL 139319, at *4 (M.D. Fla. Jan. 18, 2012) (declining to grant injunctive relief following defendant's default where plaintiff "also failed to plead all of the above-mentioned elements necessary to obtain a permanent injunction"). Accordingly, it is recommended that Plaintiff's request for injunctive relief be denied.

### B.    Compensatory Damages

Plaintiff further seeks an award of compensatory damages consisting of all the profits it lost while its Amazon account was suspended, lost inventory, and related Amazon fees. (Dkt. 1 at 15–16; Dkt. 22 ¶ 13.)

The lost profits claimed by Plaintiff consist of past lost profits and not lost profits anticipated in the future, e.g. after a trial or entry of a final judgment. In a tort action under Florida law, such as one for tortious interference or trade defamation, lost profits can be recoverable as a proper element of damages if the loss is proved with a

reasonable degree of certainty.   *See Douglass Fertilizers & Chem., Inc. v. McClung Landscaping, Inc.*, 459 So. 2d 335, 336 (Fla. 5th DCA 1984) ("It is well established that in both contract and tort actions, lost profits are recoverable only if their loss is proved with a reasonable degree of certainty."); *see also Blueskygreenland Envtl. Sols., LLC v. 21st Century Planet Fund, LLC*, No. 12-81234-CIV, 2014 WL 3667874, at *2 (S.D. Fla. July 22, 2014) (recognizing that lost profits constitute a correct measure of damages in a claim for tortious interference under Florida law).   "[O]nce causation is proven with reasonable certainty, uncertainty as to the precise amount of the lost profits will not defeat recovery so long as there is a reasonable yardstick by which to estimate the damages." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1213 (11th Cir. 2006); *accord Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 898 (Fla. 4th DCA 2007) ("Difficulty in proving damages or uncertainty as to the amount will not prevent recovery as long as it is clear that substantial (rather than merely nominal) damages were suffered as a result of the wrong."). Thus, Plaintiff may recover lost profits "so long as" (1) Plaintiff proves with "reasonable certainty" that the "lost profits were a direct result of the defendant's actions" and (2) "there is a reasonable yardstick by which to estimate the" lost profits. *Nebula Glass*, 454 F.3d at 1213; *Whitby*, 951 So. 2d at 898.

Here, Plaintiff has proven with reasonable certainty that its lost profits were a direct result of Defendants' actions in filing complaints with Amazon falsely accusing Plaintiff of selling counterfeit Predire Paris products.  Specifically, Plaintiff alleges that it bought ten Predire Paris products through a third party and then listed the products

on Amazon at a significantly lower price than Defendants. (Dkt. 1 ¶¶ 23–25.) Plaintiff alleges that Defendants falsely complained to Amazon that the Predire Paris products Plaintiff was selling were counterfeit. (Dkt. 1 ¶¶ 55–56, 58–63.) As a result, and in spite of Plaintiff's internal appeals with Amazon, Amazon suspended Plaintiff's seller account on November 23, 2019, and did not reinstate the account until June 8, 2020. (Dkt. 22-1 ¶¶ 10, 12.) Plaintiff supports its allegations with the sworn Declaration of Brandon Boeck ("Boeck Declaration"), Plaintiff's owner and operator. (Dkt. 22-1 ¶¶ 1, 5–10.) As a result, Plaintiff has shown with reasonable certainty that Defendants' false complaints that Plaintiff was selling counterfeit products resulted in the suspension of Plaintiff's Amazon seller account.

As for the second part of the test, Plaintiff must prove that there is a standard by which it calculated its alleged lost profits. *See Nebula Glass Int'l, Inc.*, 454 F.3d at 1217–18 (finding that the detailed calculations by the plaintiff's accounting and valuation expert provided an "adequate yardstick" to calculate the plaintiff's lost profits). Here, in the Boeck Declaration, Plaintiff's owner and operator attests that during the prior year from November 2018 through June 2019, Plaintiff's net profits through its Amazon sales were $142,103.09. (Dkt. 22-1 ¶ 13.) The Boeck Declaration further states that Plaintiff's net profits through its Amazon sales for the same period in November 2019 through June 2020, while Plaintiff's Amazon seller account was suspended, were zero. (Dkt. 22-1 ¶ 14.) Plaintiff further supports its claim with the

financial data it maintained in the ordinary course of business since 2018, which show Plaintiff's Amazon earnings since January 2018.[1]  (Dkt. 22-1 at 69–72.)

Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters."  *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).  However, the court is not required to hold a hearing under Federal Rule of Civil Procedure 55(b)(2) where, as here, the Motion is sufficiently supported by affidavits and documentary evidence.  *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985) (noting that damages may be awarded in a default judgment "if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." (citation and internal quotations omitted)).

On the record before the Court, Plaintiff has established a standard by which the alleged lost profits can be adequately determined, thereby satisfying the second prong of Florida's past economic damages test.  *See, e.g.*, *Shandong Airlines Co. v. CAPT, LLC*, No. 3:09-CV-308-J-32MCR, 2010 WL 11507537, at *2 (M.D. Fla. Mar. 2, 2010) ruling that declarations of employees and exhibits detailing average revenue and profit adequately established plaintiff's entitlement to lost profits without an evidentiary hearing); *NACM Tampa, Inc. v. Sunray Notices, Inc.*, No. 8:15-CV-1776-T-33TGW, 2017

---

[1] The Boeck Declaration alternatively avers that its lost profits for November 2019 through June 2020 may be measured by the net profits it anticipated in light of its year-over-year growth and earnings for the first three quarters of 2019.  (Dkt. 22-1 ¶¶ 15–16.)  In the absence of expert testimony, the Court does not find that this alternative estimate represents an adequate yardstick to calculate Plaintiff's lost profits.

WL 2209970, at *11 (M.D. Fla. Feb. 8, 2017) (recommending that declaration of plaintiff's employee established lost profit calculations within a reasonable degree of certainty and without the need for an evidentiary hearing), *report and recommendation adopted sub nom. NACM Tampa, Inc. v. Mensh*, No. 8:15-CV-1776-T-33TGW, 2017 WL 711243 (M.D. Fla. Feb. 23, 2017).

Plaintiff further seeks actual damages consisting of its lost inventory and the fees Amazon charged for disposing of inventory.  Specifically, Plaintiff seeks $24,254.59 for the cost of goods and removal fees based on Amazon's disposal of Plaintiff's inventory.  (Dkt. 22-1 ¶¶ 18–19.)  Plaintiff supports this claim with the Boeck Declaration and an attached itemization of the inventory that Amazon disposed of along with the cost of each item to Plaintiff and the disposal fee charged by Amazon.  (Dkt. 22-1 at 74–89.)  The Court finds that Plaintiff has proven within a reasonable degree of certainty that its consequential damages resulting from Defendants' tortious interference and trade defamation include Plaintiff's loss of inventory and payment of disposal fees totaling $24,254.59.

In sum, it is recommended that Plaintiff is entitled to compensatory damages as to Counts III and IV in the amount of $166,357.68.

### C. Attorney's Fees

Plaintiff further seeks an award of attorney's fees.  The Court has recommended dismissal of Count I (false advertising in violation of the Lanham Act) and Count II (FDUTPA).  In Count III and Count IV, Plaintiff alleges tort claims under Florida law.  It is "well settled" in Florida that "a successful tort claimant is not entitled to

attorney's fees for litigating the tort-feasor's liability." *United Servs. Auto. Ass'n v. Kiibler*, 364 So. 2d 57, 58 (Fla. 3d DCA 1978) (concluding that a successful tort claimant is not entitled to attorney's fees for litigating the tortfeasor's liability; claimant is only entitled to a reasonable fee for litigating the issue of insurance coverage). Indeed, the only bases for attorney's fees Plaintiff cites are its Lanham Act and FDUTPA claims.  (Dkt. 22 ¶ 14.)   Because the two facially sufficient claims in the Complaint are tort claims for which attorney's fees are not recoverable under Florida law, it is recommended that Plaintiff's request for attorney's fees be denied.

### D. Statutory, Exemplary, and Punitive Damages

Lastly, the Complaint contains a claim for "statutory, exemplary, and/or punitive damages." (Dkt. 1 at 16.)  The Complaint does allege the basis for statutory, exemplary, or punitive damages, and Plaintiff's Motion for Final Default Judgment does not address this demand for relief.  Because the Court recommends dismissal of Plaintiff's statutory causes of action and entry of default judgment only as to Plaintiff's tort claims, the Court further finds that the Complaint does not allege a legally sufficient basis for an award of statutory, exemplary, or punitive damages.

Accordingly, it is **RECOMMENDED** that:

1. Plaintiff's Motion for Final Default Judgment for Money Damages and Permanent Injunctive Relief (Dkt. 22) be **GRANTED IN PART** and **DENIED IN PART**.

- 25 -

2. The Clerk be directed to enter final default judgment in favor of Plaintiff, Wilco Trading LLC, and against Defendants, Shahar Shabat and EL Sales Corp., as to Count III and Count IV in the amount of $166,357.68 in compensatory damages.

3. The remaining counts be dismissed without prejudice.

4. The Clerk be directed to terminate all pending motions and deadlines and to close the file.

**IT IS SO REPORTED** in Tampa, Florida, on March 8, 2021.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable Thomas P. Barber
Counsel of Record